United States District Court
Southern District of Texas
**ENTERED**
November 16, 2018
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| COMPASS BANK, | § | |
| Plaintiff, | § § § | |
| V. | § § | CIVIL ACTION NO. H-17-1576 |
| KAREN W. DIXON, CAROLINE B. MITCHELL, GLORIA B. RYAN, GWYNNE K. SHACKELFORD, and SUNTRUST BANKS, INC. d/b/a SUNTRUST BANK | § § § § § § § | |
| Defendants. | § § | |

## MEMORANDUM AND RECOMMENDATION

Before the Magistrate Judge upon referral from the District Judge is Plaintiff Compass Bank's Motion to Compel Return of Trade Secret Materials, and Verified Application for a Preliminary Injunction (Document No. 60). Substantial briefing and evidence has been submitted in connection with that motion, and the parties offered their oral argument at a hearing held on November 8, 2018. Having considered the motion, the parties' extensive briefing and evidence,[1] the parties' argument, and the applicable law, the Magistrate Judge RECOMMENDS, for the reasons set forth below, that Plaintiff's Motion to Compel Return of Trade Secret Materials (Document No. 60) be GRANTED, and that Plaintiff's Application for a Preliminary Injunction (Document No. 60)

---

[1] Defendants' Emergency Motion to Strike Plaintiff's Supplemental Brief and Additional Evidence in Support of its Motion for Preliminary Injunction (Document No. 119) is DENIED. As set forth *infra*, much of the delay associated with the filing of, and the undersigned's consideration of, Plaintiff's Motion for Preliminary Injunction, stems from Defendants' delay in responding to discovery and producing responsive documents.

be DENIED.[2]

## I. Background and Procedural History

This suit was filed by Plaintiff Compass Bank in May 2017 against one of its former employees, Karen W. Dixon. Compass Bank alleged, essentially, that Dixon left her job at Compass Bank in January 2017, and went to work for SunTrust in a similar position, taking with her Compass Bank's trade secret information and encouraging Compass Bank's customers to take their business to Sun Trust. In November 2017, Compass Bank filed an Amended Complaint against Dixon based on the same general allegations that Dixon "wrongfully and deliberately accessed, converted and used Compass's confidential, proprietary and trade-secret information to try and sever Compass's long-standing profitable relationships with its customers." In January, 2018, Compass Bank added SunTrust Banks, Inc. d/b/a SunTrust Bank, as well as three additional, former Compass Bank employees, as Defendants (Caroline B. Mitchell, Gloria B. Ryan, and Gwynne K. Shackelford). A little over two months later, Compass Bank filed its Motion to Compel Return of Trade Secret Materials, and Verified Application for a Preliminary Injunction (Document No. 60).

In the Motion to Compel Return of Trade Secret Materials (Document No. 60), Compass Bank seeks an Order requiring Defendants to immediately return and destroy the trade secret and

---

[2] Defendant SunTrust's Objections and Supplemental Objections to the Evidence Plaintiff submitted in Support of its Application for Preliminary Injunction (Document Nos. 68 and 127) are OVERRULED. Both the rules of evidence, as well as the procedural predicates for the admission of evidence, can be relaxed in the injunction context. *Sierra Club, Lone Star Chapter v. F.D.I.C.*, 992 F.2d 545, 551 (5th Cir. 1993) ("at the preliminary injunction stage, the procedures in the district court are less formal, and the district court may rely on otherwise inadmissible evidence, including hearsay evidence."). Here, relaxing those rules allows for some consideration of evidence that could constitute hearsay and some consideration of evidence for which a personal knowledge predicate may not have been fully established.

confidential information the Individual Defendants took from Compass Bank prior to, and upon, their resignation from Compass Bank. Compass Bank doesn't specifically identify the information it seeks to have returned, but only generally describes it as "all client lists as well as all documents and data that contain non-public information about Compass or its clients, customers, employees or business." As for Compass Bank's Application for Preliminary Injunction, Compass Bank seeks an Order enjoining Defendants from:

> (a)   Using or disclosing any confidential, proprietary or trade secret information of or belonging to Compass;
>
> (b)   Soliciting Compass employees (in Texas) to come work for SunTrust or to leave their employment with Compass;
>
> (c)   Facilitating or assisting any third party in recruiting or attempting to recruit any Compass employees (in Texas); and
>
> (d)   Soliciting or doing business with any Compass customers (who do not already do business with SunTrust) with whom any former Compass employee now at SunTrust had contact or about whom they obtained confidential information by virtue of their employment with Compass.

Application for Preliminary Injunction (Document No. 60) at 35. Compass Bank bases its request for injunctive relief on three of its claims: for breach of contract, for tortious interference, and for misappropriation of trade secrets.

## II.   Standard for Injunctive Relief

To obtain a preliminary injunction, the movant must establish: "(1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable injury if the injunction is not issued, (3) that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted, and (4) that the grant of an injunction will not disserve the public interest.

3

*Jones v. Texas Dep't of Criminal Justice*, 880 F.3d 756, 759 (5th Cir. 2018) (citing *Byrum v. Landreth*, 566 F.3d 442, 445 (5th Cir. 2009) and quoting *Speaks v. Kruse*, 445 F.3d 396, 399–400 (5th Cir. 2006)). "A preliminary injunction is an extraordinary remedy. It should only be granted if the movant has clearly carried the burden of persuasion on all four [ ] prerequisites." *Mississippi Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir. 1985). "As a result, '[t]he decision to grant a preliminary injunction is to be treated as the exception rather than the rule.'" *Karaha Bros. Co., L.L.C. v. Perusahaan Pertambangan Minyak Das Gas Bumi Negara*, 335 F.3d 357, 363 (5th Cir. 2003).

### III. Discussion

#### A. Motion to Compel Return of Trade Secret Materials

Compass Bank argues for the return of its confidential and trade secret client information that the Individual Defendants took when they resigned, and then used to the benefit of Defendant SunTrust. While Compass Bank does not, as argued by Defendants, specifically identify any document, other than a "Client List," that it wants returned, Compass Bank has made a compelling argument that the information contained on that "Client List," regardless of who compiled or created it, belongs to Compass Bank as its confidential information and/or trade secret information.[3]

Client information can constitute trade secret information. *See Alliantgroup, L.P. v. Feingold*, 803 F. Supp. 2d 610, 625 (S.D. Tex. 2011)("Under Texas law, customer lists may be protected as trade secrets."); *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 134A.002 ("'Trade

---

[3] Exhibit 19 (Document No. 61-21) is the "Client List" and is the only document, described with any particularly by Compass Bank, that has been identified as a trade secret and/or as containing trade secrets.

secret' means all forms and types of information, including business, scientific, technical, economic, or engineering information, and any formula, design, prototype, pattern, plan, compilation, program device, program, code, device, method, technique, process, procedure, financial data, *or list of actual or potential customers or suppliers, whether tangible or intangible and whether or how stored, compiled, or memorialized* physically, electronically, graphically, photographically, or in writing if: (A) the owner of the trade secret has taken reasonable measures under the circumstances to keep the information secret; and (B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information."). Mark Montgomery, Houston Market CEO at Compass Bank, states in his Declaration that Compass Bank's client information *is* confidential and proprietary and that Compass Bank has "taken all necessary precautions to prevent unauthorized access to confidential and proprietary information." (Document No. 61-2 at 3). Those precautions include, as it specifically relates to the Individual Defendants, provisions in the Employment Agreements each of the Individual Defendants had with Compass Bank.[4] The Employment Agreements set forth in great detail the type of information

---

[4] Individual Defendants argue that the Employment Agreements, which identify BBVA Compass Investment Solutions, Inc. and BBVA Compass Insurance Agency, Inc. as the Individual Defendants' "Employer," are not enforceable by Plaintiff Compass Bank. Although it is true the Employment Agreements do not identify Plaintiff Compass Bank as the Individual Defendants' "Employer," the Employment Agreements specifically state that they were intended to benefit "BBVA USA Bancshares, Inc., a Texas corporation, all of its affiliates and subsidiaries, and their successors and assigns (collectively 'Affiliates')." (Document No. 61-10 at 2). Plaintiff Compass Bank is an affiliate/subsidiary of BBVA Compass Bancshares, Inc. (Sealed Document No. 137). As such, Compass Bank has standing as an intended third party beneficiary, if nothing else, to seek enforcement of the Individual Defendants' Employment Agreements. *See Resolution Tr. Corp. v. Kemp*, 951 F.2d 657, 662 (5th Cir. 1992) ("Texas law requires that a party claiming third-party beneficiary status must prove *from the terms of the contracts* that the contracting parties *made* the contracts for the benefit of the third party and

Compass Bank considered "Protectable" and the restrictions on the Individual Defendants' use of such "Protectable Information."[5] While Defendants argue that Compass Bank has not identified the

---

*intended* to benefit the third party at the time the parties entered into the contracts.") (emphasis added).

[5] Paragraph 6 of the Individual Defendants' Employment Agreements provides as follows with respect to "Protectable Information":

> Employee hereby acknowledges that as a result of the employment relationship with Employer, Employer will provide, and promises to provide and to continue to provide, Employee with Protectable Information, as defined below, since the commencement of Employee's employment and during the course of Employee's employment, concerning Employer and Employer's customer relationships, as well as other information in which Employer has a protectable interest. All Protectable Information, customer information, accounts, and customer and account relationships are the property of Employer and/or of the Affiliates. Employee acknowledges that Employer and the Affiliates are engaged in highly competitive business, that Employer and the Affiliates expend substantial amounts of time, money and effort to develop and protect their Protectable Information, and that Employee will benefit from these efforts.
>
> Employee understands and acknowledges that he/she will be provided, and have access to, certain confidential and proprietary information of Employer and the Affiliates, including, without limitation, customer lists, customer information, customers' identities, customers' personal data and contact information, nonpublic and/or confidential customer information, customers' account information and balances, customers' investment and financial preferences, trade secrets, confidential methods of operation and organization, pricing, markups, commissions, manuals and policies and procedures, unique processes, products, business or marketing plans, and other intellectual property and that all such information constitutes confidential, valuable, special and unique property of Employer and the Affiliates or their vendors (collectively, "Protectable Information"). Employee shall not at any time directly or indirectly use, disclose, furnish, sell, transfer, communicate, or make accessible, in any manner, any such Protectable Information for Employee's own benefit or for the benefit of anyone other than Employer or the Affiliates. Protectable information shall be used by Employee solely and exclusively for the business of Employer or the Affiliates. Neither Employer nor the Affiliates grant a right or license to the Employee in any Protectable Information. Employee agrees that copying, duplicating, or removing any Protectable Information from the premises of Employer or the Affiliates without the express written permission of Employer's most senior executive will

trade secret and/or confidential information it wants returned and that the "Client List" is not, and should not be considered, either confidential or trade secret information, Defendants have put forth no reason why the Client List, to the extent it can be considered "Protectable Information" within the meaning of the Individual Defendants' Employment Agreements, should not be returned to Compass Bank. Given that the "Client List" contains information that falls within the scope of the "Protectable Information" provision of each of the Individual Defendants' Employment Agreements, and given that Defendants have offered no reason why that "Client List" should not be returned, the Magistrate Judge concludes that the "Client List" should be returned to Compass Bank at this time. TEX. CIV. PRAC. & REM. CODE ANN. § 134A.003 (c) ("In appropriate circumstances, affirmative acts to protect a trade secret may be compelled by court order."). As for any other information and/or documents, because nothing has been specifically identified by Compass, all that Compass Bank is currently entitled to is the return of the "Client List."

**B.      Application for Preliminary Injunction**

Compass Bank also seeks injunctive relief based on its claim against the Individual Defendants (Karen W. Dixon, Caroline B. Mitchell, Gloria B. Ryan and Gwynne K. Shackelford) for breach of contract; its claim against SunTrust for tortious interference, and its claim(s) against

---

> be considered a breach of Employee's promises under this Agreement.
>
> * * *
>
> The obligations under this section survive Employee's termination, regardless of
> the reason for such termination and the time such termination occurs, the
> termination of this Agreement, and the expiration of any restrictive period
> identified in the Non-Solicitation Section of this Agreement.

(Document No. 61-10 at pp. 3-4).

all Defendants for misappropriation of trade secrets. All of those claims arise from Compass Bank's allegations that the Individual Defendants breached their Employment Agreements with Compass Bank when they resigned and went to work for SunTrust, taking with them confidential and trade secret information about Compass Bank's clients, which they then used to contact Compass Bank's clients and solicit their business on behalf of SunTrust. The relevant non-solicitation provisions in the Individual Defendants' Employment Agreements state as follows:

> 9. Non-Solicitation. In consideration of the Protectable Information that Employer promises to provide and/or has provided to Employee under this Agreement as well as other good and valuable consideration, Employee agrees that during Employee's employment with Employer and for a period of twelve (12) consecutive months following the termination of Employee's employment for any reason, Employee shall not, either on Employee's own behalf or as an agent, consultant, partner, employee, owner, or representative of any person or entity, directly or indirectly:
>
> > a. Provide, sell, or market, or endeavor to provide, sell, or market, any competing products or services to any of Employer's or the Affiliates' customers, or otherwise contact, contract, solicit, or do business with, or endeavor to contact, contract, solicit, or do any business with any of the Employer's or the Affiliates' customers, to/from whom Employee or anyone that Employee directly or indirectly supervised, during the last two years of employment with Employer: (i) provided, offered, or sold products or services; (ii) made sales or sales proposals;, (iii) received commissions or fees, or (iv) obtained information related to banking, investment, insurance, or other business or financial matters during his/her employment with Employer or the Affiliates.
> >
> > b. Urge, induce or seek to induce any of the Employer's or the Affiliates' customers to terminate, cancel, reduce, or limit their banking, brokerage, insurance, or securities related business with Employer or the Affiliates; or
> >
> > c. Solicit, recruit, hire, employ, or encourage any employee of Employer or any of the Affiliates with whom Employee worked or supervised, to leave his/her employment for any reason, or to terminate his/her license or otherwise interfere with a licensed

8

> employee's relationship with the Employer or any of the Affiliates or any of their respective employees.

Employment Agreements (Document Nos. 61-10, 61-11, 61-12, and 61-13). In addition, in connection with each of the Individual Defendants' receipt of a cash long term incentive award, each Individual Defendant signed a "Cash Incentive Award Agreement." (Document Nos. 61-14, 61-15, 61-16 and 61-17). Those "Cash Incentive Award Agreements" all contained a "Restrictive Covenant Agreement" and the following "Non-Solicitation of Customers" provision:

> Employee understands and agrees that the Company's relationships with its customers are a key driver of its success. Those relationships are built over time, and with the Company's resources, and by making use of the Company's good will. Employee also understands and agrees that his or her efforts in establishing, developing, and enhancing customer relationships are made on behalf of the Company and that those relationships belong to the Company, not to Employee. Accordingly, to protect those relationships, Employee will not, during the term of his or her employment with the Company and for a period of one (1) year after termination for any reason of his or her employment with the Company, solicit or attempt to solicit business, directly or indirectly, from the Company's customers or actively sought prospective customers with whom Employee had material contact during employment for the purpose of providing products or services that are competitive with those provided by the Company. "Material contact" exists between an Employee and each customer or potential customer with whom Employee dealt, whose dealings were coordinated or supervised by Employee, about whom Employee obtained confidential information in the ordinary course of business as a result of Employee's association with the Company, or who receives products and services from the Company and for which Employee received compensation, commissions, or earnings during the two-year period prior to the termination of Employee's employment. "Products or services that are competitive with those provided by the Company" includes anything of commercial value that is the same as or similar to the products or services of the Company.

(Document No. 61-11 at 14). Based primarily on the terms of the Individual Defendants' Employment Agreements and the "Restrictive Covenant Agreement" in the Individual Defendants' "Cash Incentive Award Agreements," as well the evidence Compass Bank has adduced that many of its customers, including a majority of those on the "Client List," are now customers of SunTrust,

9

where the Individual Defendants all now work, Compass Bank seeks the injunctive relief described above.

Defendants, in response to Compass Bank's request for injunctive relief, make four main arguments. First, Defendants maintain that the Employment Agreements are not enforceable by Compass Bank because Compass Bank was not identified in the Employment Agreements as the Individual Defendants' "Employer." Second, Defendants argue that the 12 month operable term for the non-solicitation provisions in the Employment Agreements has expired, and any argument by Compass Bank that the operable term should be extended by the "Extension of Restrictive Covenants" provision in the Employment Agreements disregards the controlling law in Texas on what is a reasonable length and scope of an enforceable restrictive covenant. Third, Defendants maintain that the evidence in the record shows that the Individual Defendants did not "solicit" Compass Bank's customers. Fourth and finally, Defendants contend that Compass Bank waited too long to seek injunctive relief. The first three arguments relate, in the injunction context, to whether Compass Bank has established "a substantial likelihood of prevailing on the merits." The fourth argument, in contrast, relates to whether Compass Bank has shown, or can show, "a substantial threat that irreparable injury will result in the absence of the injunction." Because an injunction is available only if all four elements are shown, and because the Magistrate Judge is convinced that Compass Bank has not carried its burden of clearly showing, from this point in time forward, a "substantial threat that irreparable injury will result in the absence of the injunction," the focus herein will be on the irreparable injury element.[6]

---

[6] Much of the parties' briefing is devoted to whether there is a "substantial likelihood of success on the merits." The evidence in the record submitted in connection with Compass Bank's Application for Preliminary Injunction establishes a substantial likelihood of success on

the merits of at least one of the Compass Bank's claims upon which it seeks injunctive relief – for breach of contract, tortious interference, and/or misappropriation of trade secrets. More specifically, the evidence supports a determination that Compass Bank is likely to succeed on the merits of its breach of contract claims against the Individual Defendants. That evidence consists of the provisions in the Individual Defendants' Employment Agreements, as well as the deposition testimony of Plaintiff Dixon that she and the other Individual Defendants compiled a list of Compass clients and "guesstimates" of their assets and potential revenue therefrom, and that Plaintiff Dixon and the other Individual Defendants contacted clients on that client list after they resigned from Compass Bank. (Document No. 61-1 at 18). While the Individual Defendants maintain, and believe, that the terms of their Employment Agreements allowed them to contact and communicate with Compass' clients as long as they did not "solicit" those clients' business for SunTrust, *see* Shackelford Deposition (Document No. 117-1 at 15) and Ryan Deposition (Document No. 117-3 at 4), that view of the restrictions in the Employment Agreements is too narrow. The Employment Agreements not only restricted the Individual Defendants from soliciting business from Compass Bank's customers, it prohibited them from, *directly or indirectly*, providing, selling, marketing, endeavoring to provide, sell or market, any competing products, or otherwise *contacting*, contracting, soliciting, or doing any business with, *or endeavoring to contact*, contract, solicit, *or do business with* any of Compass Bank's customers. *See* Employment Agreements (Document Nos. 61-10, 61-11, 61-12 and 61-13 at pp. 4-5) (emphasis added). Based on the evidence in the record that the Individual Defendants did, upon their resignation from Compass Bank, contact Compass Bank's customers, did discuss their move from Compass Bank to SunTrust, and did discuss what SunTrust had to offer, and did so while offering Compass Bank's customers tickets to sporting events and the like, paid for by SunTrust, Compass Bank has met its burden of establishing a likelihood of success on the merits of its breach of contract claim(s).

As for whether Compass Bank's *prima facie* showing of a breach of contract by the Individual Defendants would support a tolling of the Employment Agreement's no-solicitation provisions, such a determination, in this preliminary injunction context, would be tantamount to a determination on the merits. In addition, because it is not clear whether the "tolling" provision in the Employment Agreements could withstand the "restraint of trade" arguments advanced by Defendants given the indefiniteness as to the length of any tolling, *see* Employment Agreements, ¶ 12 "Extension of Restrictive Covenants" (Document Nos. 61-10, 61-11, 61-12 and 61-13 at 5 ("In the event Employee violates any of the restrictive covenants contained in the Non-Solicitation Section, the duration of such restrictive covenant shall automatically be extended by the length of time during which Employee was in violation of such restriction."), and *IKON Office Sols., Inc. v. Furnish*, No. SA-06-CA-434-FB, 2007 WL 9702416, at *9 (W.D. Tex. Oct. 31, 2007), *report and recommendation adopted*, No. SA-06-CA-434-FB, 2008 WL 11408513 (W.D. Tex. Feb. 11, 2008) (the tolling provision "creates an unreasonable restraint because it creates an indefinite period in which Furnish's actions are restrained and it creates an indefinite time at which this restraint will begin. . . . A clause that is based in such indefiniteness cannot be upheld as a reasonable restraint on trade."), it cannot (and should not) be determined on this record and in this context, whether the Non-Solicitation provisions in the Individual Defendants'

11

A showing of a "substantial threat of irreparable injury" is at least two-fold. First, the threat of injury must be substantial – meaning, it must be imminent or urgent, and not speculative. *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009) ("the threat must be actual and imminent, not conjectural or hypothetical"); *Google, Inc. v. Hood*, 822 F.3d 212, 228 (5th Cir. 2016) (injury must be imminent and non-speculative). Second, the injury must be irreparable – meaning, it must be an injury "for which compensatory damages are unsuitable." *Wildmon v. Berwick Universal Pictures*, 983 F.2d 21, 24 (5th Cir. 1992); *see also Janvey v. Alguire*, 647 F.3d 585, 600 (5th Cir. 2011) ("In general, a harm is irreparable where there is no adequate remedy at law, such as monetary damages."); *G&G Closed Circuit Events, LLC v. 1) GCF enterprises LLC*, No. EP-15-CV-00111-KC, 2015 WL 7313427, at *5 (W.D. Tex. Nov. 19, 2015) ("An irreparable injury is defined as one which "cannot be undone through monetary remedies.").

Here, Compass Bank argues that a former employee's access to, and the ability to use, trade secret information constitutes *per se* irreparable injury, for which injunctive relief is warranted. While some courts have presumed irreparable injury in trade secret cases such as this, *see Am. Exp. Fin. Advisors, Inc. v. Scott*, 955 F. Supp. 688, 693 (N.D. Tex. 1996) ("In Texas, injury resulting from the breach of non-compete covenants is the epitome of irreparable injury."), that presumption is rebuttable. *Cardinal Health Staffing Network, Inc. v. Bowen*, 106 S.W.3d 230, 236 (Tex. App.. – Houston [1st Dist.] 2003) ("proof that a highly trained employee is continuing to breach a non-competition covenant gives rise to a rebuttable presumption that the applicant is suffering irreparable injury"); *TRAVELHOST, Inc. v. Figg*, No. 3:11-CV-0455-D, 2011 WL 6009096, at *3 (N.D. Tex. Nov. 22, 2011) (presumption, even if it applies, is rebuttable). And here, on this record, if there is

---

Employment Agreements have, or have not, expired.

harm or injury attributable to the Individual Defendants' alleged breaches of their Employment Agreements or Defendants' use of Compass Bank's confidential and/or trade secret information about its clients/customers, that harm or injury, or at least much of it, has already occurred. In the Declaration he filed with the Application for Preliminary Injunction, Mark Montgomery stated that as of the date of his Declaration (March 14, 2018), "over 20 clients have moved accounts from Compass to SunTrust with assets, loans and other products valued at over $250 million" and that "the most recent client that moved business to SunTrust occurred in February 2018." (Document No. 61-2 at 4). While a supplemental submission shows that Compass Bank lost another client to SunTrust in September 2018, that client was not on the Client List, and that client's Declaration shows that Compass Bank's loss of his business had nothing to do with the Individual Defendants. (Document No. 130-23).[7] Thus, the evidence in the record is that Compass Bank *has* lost business

---

[7] In his Declaration, that former Compass Bank customer states:

2. Although I still maintain a banking relationship with BBVA Compass, in September 2018, I moved a loan and associated collateral to SunTrust's Wealth Management Division. My reasons for making this move are set forth below.

3. Sometime early this past summer, a loan I had at BBVA Compass was up for renewal. As part of the renewal process, BBVA Compass informed me that the terms going forward would be different than what they had been in the past. BBVA Compass told me these changes were part of a new policy at the bank. I was not happy with the new terms, and over the summer I worked with various individuals at BBVA Compass to try to come to terms that I found acceptable. Although I believe these individuals really tried to help me, BBVA Compass did not change its new policy for me.

4. After it became clear to me that there was no way around BBVA Compass's new policy regarding the terms of my loan, I reached out to Gloria Ryan to see what SunTrust could do for me. Ultimately, SunTrust offered me loan terms like those I originally had with BBVA Compass, and I decided to move my loan to SunTrust. Because my investment accounts at BBVA Compass secured my loan, and would do the same at SunTrust, they had to move as well.

and clients to SunTrust, but there is no evidence that there is any imminent, non-speculative threat of additional business losses that could be attributed to the Individual Defendants' alleged breaches of their Employment Agreements or Defendants' use of Compass Bank's confidential and/or trade secret information. Simply put, the harm and injury from the alleged misconduct of Defendants has already occurred, and any threat of additional harm is unsupported, not quantified and speculative. Moreover, as pointed out by Defendants, Compass Bank's injury as of the date it filed its Application for Preliminary Injunction in March 2018 *has* been quantified, *see* Mark Montgomery Declaration (Document No. 61-2 at 4) ("As of the date of this Declaration, over 20 clients have moved accounts from Compass to SunTrust with assets, loans and other products valued at over $250 million."), evidencing, in some respect, that the harm is generally susceptible to money damages calculations. Though complicated, and not necessarily precise, there is nothing in the record to show that damages cannot be calculated or that money damages would be insufficient to compensate Compass Bank for any additional harm or injury from this point forward. For those reasons, the Magistrate Judge concludes that Plaintiff Compass Bank has not met its burden of showing that it will, *from this point in time forward*, suffer irreparable injury if an injunction is not entered. Although each side may assume that this determination is predicated solely on Compass Bank's delay in seeking injunctive relief, it is not.

As argued by Defendants, and not disputed by Compass Bank, undue delay in seeking injunctive relief may demonstrate that injury is not imminent, and relief is not urgent. *Gonannies,*

---

> Had BBVA Compass not changed the terms of my loan, I would not have moved it or the associated collateral to SunTrust.

(Document No. 130-23).

*Inc. v. Goupair.Com, Inc.*, 464 F. Supp. 2d 603, 609 (N.D. Tex. 2006). But undue delay means unreasonable and unexplained delay, *Daily Instruments Corp. v. Heidt*, 998 F. Supp. 2d 553, 570 (S.D. Tex. 2014) ("delay will not negate a finding of irreparable harm where the plaintiff has a good explanation"), and here the delay has been explained, and creditably so. Defendants have, in the undersigned's view, "dragged their feet" during discovery, leaving Compass Bank with months' long assurances that documents would be produced and hampering Compass Bank's ability to file a fully supported Application for Preliminary Injunction. Compass Bank filed this case against Dixon in May 2017, four months after Dixon resigned. Compass Bank then sought expedited discovery from Dixon, and SunTrust, which was then a non-party. Upon gaining production from SunTrust in November 2017, Compass Bank added SunTrust and the other Individual Defendants to this case, and two months thereafter, filed its Application for Preliminary Injunction. Consideration of that Application was then delayed while Defendants resisted Compass Bank's additional discovery efforts. The delay in seeking injunctive relief has sufficiently, and reasonably, been explained, and such delay does not, in and of itself, warrant the denial of the injunctive relief sought. Instead, it is the delay and the attendant harm *that has already occurred* which makes injunctive relief inappropriate at this time. While none of that is Compass Bank's fault, Compass Bank has not convinced the undersigned that it faces a substantial threat of *additional* injury *that could be prevented* if an injunction were issued. Accordingly, the Magistrate Judge will recommend that Compass Bank's Application for Injunctive Relief be DENIED.

## IV. Conclusion and Recommendation

Based on the foregoing, and the conclusion that Plaintiff Compass Bank is entitled to return of the Client List, which contains "Protectable Information" within the meaning of the Individual Defendants' Employment Agreements, but that Plaintiff Compass Bank has not clearly carried the burden of showing, or persuading the Court, that there is a substantial threat that irreparable injury will result in the absence of an injunction, the Magistrate Judge RECOMMENDS that Plaintiff Compass Bank's Motion to Compel Return of Trade Secret Materials be GRANTED and that Plaintiff Compass Bank's Verified Application for a Preliminary Injunction (Document No. 60) be DENIED.

The Clerk shall file this instrument and provide a copy to all counsel and unrepresented parties of record. Within fourteen (14) days after being served with a copy, any party may file written objections pursuant to 28 U.S.C. § 636(b)(1)(C), FED. R. CIV. P. 72(b), and General Order 80-5, S.D. Texas. Failure to file objections within such period shall bar an aggrieved party from attacking factual findings on appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Ware v. King*, 694 F.2d 89 (5th Cir. 1982), *cert. denied*, 461 U.S. 930 (1983); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982) (en banc). Moreover, absent plain error, failure to file objections within the fourteen day period bars an aggrieved party from attacking conclusions of law on appeal. *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1429 (5th Cir. 1996). The original of any written objections shall be filed with the United States District Clerk.

Signed at Houston, Texas, this 16th day of November, 2018.

FRANCES H. STACY
UNITED STATES MAGISTRATE JUDGE